# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,

        Plaintiff,

v.

MARTHA OLIVER, *parent and next friend of K.C., a minor, et al.*,

        Defendants.

Civil Action No. 13-215 (BAH)(DAR)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Pending before the Court is the defendants', Martha Oliver and Jeffrey Crater, Motion for Preliminary Injunction, ECF No. 26, seeking to invoke the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), to require the defendant District of Columbia to fund their child's education at a private school for the 2013-2014 school year. Following a hearing on this motion held November 13, 2013, for the reasons set forth below, the motion is granted.

**I.    BACKGROUND**

The defendants' daughter, K.C., is a child with special needs who resides in the District of Columbia but has never attended District of Columbia public schools. Admin. Record ("AR") ("Hearing Officer Determination") at 540,[1] ECF No. 14-2. On October 28, 2011, the defendants requested that the plaintiff "begin the process of evaluating the Student, determining her eligibility for special education and related services, and providing an offer of [Free Appropriate Public Education ("FAPE")]." *Id.* The plaintiff subsequently determined the child was eligible for special education and related services under the IDEA, but "refused to develop an

---

[1] All page numbers in the Administrative Record refer to the "Bates" number stamped on the document.

individualized education ("IEP") for the Student," based on the plaintiff's policy that "students are not eligible for an IEP unless they are enrolled and attending a DCPS Public School." *Id.* at 542. In the absence of an IEP, the defendants timely informed the plaintiff "that they intended to maintain placement for the Student at Private School for the 2012-13 school year and requested public funding for that placement." *Id.* The private school, which the child is currently attending, the Lab School of Washington, "provides full-time special education to students with disabilities" and "is approved by the Office of the State Superintendent of Education ("OSSE") to provide special education services in the District of Columbia." *Id.*

The defendants filed an administrative due process complaint on September 11, 2012, alleging, *inter alia*, that the plaintiff denied the student a FAPE by refusing to propose an IEP, and seeking funding for the child at her private school for the 2012-2013 school year. *Id.* at 536, 539. Following a hearing, the hearing officer released a determination ("HOD") on November 25, 2012, finding that the plaintiff had violated the IDEA and denied the defendants' child a FAPE by refusing to provide an IEP, despite the plaintiff's conclusion that the child was "eligible for special education and related services." *Id.* at 536, 551. The HOD further found that "the parental placement at Private School is proper under the IDEA, as the student is receiving significant educational benefit from the program." As support for this finding, the HOD explained that "the Private School placement also appears to be appropriately tailored to meet the needs of the Student, considering the nature and severity of her disabilities, her specialized needs, and the link between those needs and services offered at Private School. Private School can provide a full-time, special education program within a small, structured setting that is well suited to the Student's particular needs. Moreover, the placement aligns very well with the recommendations made by the Student's evaluators, and is able to provide the

Student with the placement that she needs to access her education." *Id.* at 552–53 (internal citations omitted).  The HOD ordered the plaintiff to "place and fund the Student at Private School for the remainder of the 2012-13 school year, with transportation" and to create an IEP for the student by no later than December 24, 2012.  *Id.* at 553–54.

The plaintiff timely filed suit in this Court, challenging the HOD on multiple grounds. *See* Compl., ECF No. 1.  Although the plaintiff did "comply with the hearing officer's order that it fund the 2012-1013 school year," the plaintiff refused to comply with the portion of the order requiring development of an IEP by December 24, 2012, leaving the child with no alternative placement to the private school she currently attends.  The instant motion for injunctive relief is prompted by the plaintiff's refusal to fund the child's placement at the private school for the 2013-14 school year.  Pl.'s Opp'n to Defs.' Mot. Prelim. Inj. ("Pl.'s Opp'n") at 1, ECF No. 27. Specifically, the defendants seek funding for the child's placement under 20 U.S.C. § 1415(j), "retroactive to the start of the 2013-2014 school year," and "continuously thereafter until the completion of the [plaintiff's] appeal" on October 29, 2013.  Defs.' Mot. for Prelim. Inj. ("Defs.' Mot.") at 11, ECF No. 26.  Oral arguments on the motion were heard on November 13, 2013. This motion is now ripe for decision.

## II. LEGAL STANDARD

The defendants have styled their motion as one for a preliminary injunction, which the plaintiff contends is "improper" because the relief sought is enforcement of "the automatic injunction in 20 U.S.C. § 1415(j)."[2]  *See* Pl.'s Opp'n at 3; Defs.' Mot. at 10.  This statutory provision states that, except in certain circumstances inapplicable here, "during the pendency of

---

[2] The defendants contend that this is a "distinction without a difference," Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. Prelim. Injunction ("Defs.' Reply") at 4, ECF No. 2, but the difference is significant since the legal showing necessary to obtain preliminary injunctive relief and to trigger the automatic injunction under § 1415(j) are substantially different.

3

any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). By its terms, this procedural safeguard, commonly known as the "stay-put provision," "functions, in essence, as an automatic preliminary injunction." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (discussing the identical IDEA provision when it was codified at § 1415(e)(3)); *see also Laster v. District of Columbia*, 439 F. Supp. 2d 93, 98–99 (D.D.C. 2006) (collecting cases and noting "courts have consistently interpreted the stay-put provision to be an automatic injunction.").

In evaluating requests for injunctive relief under the stay-put provision, the traditional four-part test for a preliminary injunction does not apply. *See Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1023–24 (D.C. Cir. 1989) (noting that "if the [stay-put] provision applies, injunctive relief is available without the traditional showing of irreparable harm"); *see also District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 84 (D.D.C. 2012) (finding a school's "unilateral change to that [current educational] placement" entitles movants to "enforcement of their stay-put rights pursuant to § 1415(j), irrespective of their ability to demonstrate irreparable harm, likelihood of success on the merits, or a balancing of equities in their favor."); *Alston v. District of Columbia*, 439 F. Supp. 2d 86, 91 (D.D.C. 2006) ("The traditional four-part standard for injunctive relief, however, does not apply in the present case because 'the stay-put provision has been interpreted as imposing an automatic statutory injunction.'") (quoting *Casey K. ex rel. Norman K. v. St. Anne Cmty High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay-put injunction to an automatic stay in a bankruptcy case) (citing *Honig v. Doe*, 484 U.S. 305, 326-37 (1988))). Rather, the movant invoking the stay-put provision must show that (1) proceedings under the IDEA are pending; and (2) prevention of a change in the "then-

4

current educational placement" of the child is sought. *See* 20 U.S.C. 1415(j); *Moore v. District of Columbia*, No. 09-656, 2009 U.S. Dist. LEXIS 34349 (D.D.C. Apr. 22, 2009). Upon meeting this two-part inquiry, the movant is presumptively entitled to a stay-put injunction in favor of the child's current placement, unless the school district overcomes the presumption by demonstrating "that application of the traditional four part preliminary injunction test warrants a different result." *Laster v. District of Columbia*, 439 F. Supp. 2d 93, 99 (D.D.C. 2006); *see also Honig*, 484 U.S. at 328 (finding the stay-put provision "effectively creates a presumption in favor of the child's current educational placement which school officials can overcome only by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others."); *Henry v. Sch. Admin. Unit No. 29*, 70 F. Supp. 2d 52, 58 (D.N.H. 1999) ("The preference may be overcome through the issuance of a preliminary injunction if the equitable factors traditionally used by courts to evaluate requests for interim injunctive relief favor a change in the child's placement."). The plaintiff vigorously argues that the stay-put provision is inapplicable, which amounts to a challenge to the defendants' likelihood of success on the merits, but the plaintiff makes no effort in its opposition to address the other equitable factors necessary to overcome the presumptive automatic injunction.[3]

---

[3] Under *Honig*, schools maintain their ability to seek injunctive relief in the face of any contrary mandate of the stay-put provision. *Honig*, 484 U.S. at 327 (holding that the stay-put provision does not "operate to limit the equitable powers of district courts such that they cannot, in appropriate cases, temporarily enjoin a dangerous disabled child from attending school."). Yet, while parents are entitled to the "presumption in favor of the child's current educational placement," *id.* at 328, schools must rely upon the traditional four factor test for seeking injunctive relief "to demonstrate that the educational status quo must be altered" when the stay-put provision applies. *Id.* at 328 n.10. In the instant motion, the plaintiff does not discuss any irreparable harm that may flow from the injunctive relief requested, any lack of substantial harm to the rights of the defendants by denying them the requested injunctive relief, or the public interest served by denying the motion. *See* Pl.'s Opp'n *generally*. Therefore, the plaintiff has not made the requisite showing that the "relative harms to the parties . . . tip[] decidedly in favor" of the plaintiff such that the injunctive relief requested by the defendants under the stay-put provision should be denied, if the other prerequisites for invocation of this provision are met. *Honig*, 484 U.S. at 328 n.10.

## III. DISCUSSION

The plaintiff raises two distinct but closely related arguments in opposition to the defendants' motion: (1) that the child in question does not have a current educational placement to be maintained under § 1415(j) because an IEP has not been provided; and (2) that granting the defendants' motion would effectively decide the merits of the plaintiff's appeal by recognizing the student's current placement as an educational placement under the IDEA. *See* Pl.'s Opp'n at 4–5. As explained below, these arguments are unavailing.

### A. The Defendants' Child's Current Private School Placement Is A Current Educational Placement Under The IDEA

The plaintiff characterizes the defendants' request "that the Court order DCPS to fund K.C.'s tuition at the Lab School" for the 2013-1014 school year as "an inaccurate application of IDEA terminology" and "puts the cart before the horse." Pl.'s Opp'n at 4. In essence, the plaintiff argues that the terminology of "the then-current educational placement," which is used in the stay-up provision, "means the overall educational program that is documented on a student's IEP." *Id.* Absent an IEP, as in this case, "there is no educational placement to be maintained." *Id.* Thus, the plaintiff contends that a fundamental prerequisite for invocation of the stay-put provision is missing here, namely, an IEP, which the plaintiff further argues is not required to be provided to a parentally-placed private school child.

At the outset, the Court notes that the IDEA and its accompanying regulations do not define the term "then-current educational placement" or even the shorter term "educational placement" as used in § 1415(j). Consequently, absent any definition, the Court must look first to the plain meaning of the language. The plaintiff would have the Court construe the term "educational placement" to be limited to a placement reflected in or sanctioned by an IEP, but the statute simply does not refer to an IEP. If Congress had meant that the "current educational

6

placement" was embodied in an IEP, it could easily have written that limitation into the statute. Instead, the provision expresses its intention to preserve the *status quo* by referring to the placement in which the child is actually receiving educational services at the time the dispute first arises. Certainly, when an IEP is in place, the program placement where the IEP is being implemented is the placement subject to the stay-put provision. *See Johnson v. District of Columbia*, 839 F. Supp. 2d 173, 177 (D.D.C. 2012) ("Typically, '[t]he dispositive factor in deciding a child's 'current educational placement' should be the [IEP] . . . actually functioning when the 'stay-put' is invoked.") (quoting *Drinker*, 78 F.3d at 867) (alterations in original); *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009) ("'Educational placement' refers to the general educational program—such as the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school.").

Where, as here, no IEP has been prepared or implemented, the "current educational placement" will be the place where the child is actually receiving instruction at the time the dispute arises, provided there has been some sort of administrative determination that the location is appropriate. *See District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 86 (D.D.C. 2012) ("[E]ven where the child never had a functioning IEP, an administrative determination in favor of the parents constituted an implied agreement as to a placement for stay-put purposes, so long as the hearing officer made findings on the merits that the school system had failed to provide a FAPE and that the private program chosen by the parents was appropriate."); *Mangum v. Renton Sch. Dist.*, No. C10-907, 2011 WL 307376, at *2–7 (W.D. Wash. Jan. 27, 2011) (holding stay-put provision applied to student without an IEP explaining that "[t]here is no obvious reason that Congress would exclude students who seek to force the District to find them

disabled, thus requiring the school to develop an IEP. Those students have the same right to invoke IDEA's procedural safeguards, including administrative proceedings and a civil action in a competent court. If Congress had intended to deny those students the protection of the stay-put provision, the court expects it would have made its intention clear.") (relying upon *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990) ("squarely reject[ing] the notion that only a placement made pursuant to an IEP qualifies as an 'educational placement'")). In short, the Court concludes that, contrary to the plaintiff's argument, the procedural safeguard provided in the stay-put provision is not limited to only those children for whom the school district has already provided an IEP.

This conclusion is the same reached recently by another Judge on this Court. In *Vinyard*, the court granted a preliminary injunction under the IDEA's stay-put provision to a child for whom the District had refused to provide an IEP because the student was not "enrolled in a public school." 901 F. Supp. 2d at 82. Similarly to the instant facts, the hearing officer determined that the District's denial violated the IDEA and ordered the District to fund the child's education and placement at a private school "until either [Defendants] and [the District] agree otherwise or another hearing officer or court of appropriate jurisdiction decides otherwise." *Id.* at 82–83 (brackets in original). When the District refused to reimburse the private school tuition, in accordance with the HOD, the child's parents sought an injunction under the stay-put provision. *Id.* at 83. The court in *Vinyard* determined that, even though the child had no IEP due to the District's refusal to provide an IEP, the private school placement was the child's current educational placement for IDEA purposes since the HOD found that the program and services offered at the private school placement were "beneficial and that the [private school] was an

appropriate placement." *Id.* at 86 (internal quotation marks omitted). Therefore, the court found, the stay-put provision applied. *Id.* at 91–92.

The plaintiff in the instant action attempts to distinguish *Vinyard* in several ways, none of which are persuasive. Specifically, the plaintiff argues that the HOD in this case erred in (1) "neglecting to first determine the student's educational placement, [(2)] erred in rendering a decision unsupported by a preponderance of the evidence, and [(3)] erred in ordering 'prospective placement,' all of which "arguments [were] not addressed by *Vinyard*." Pl.'s Opp'n at 3. The plaintiff's challenges to the deficiencies in the HOD, for the purposes of the stay-put provision, are irrelevant since the HOD constitutes an "agreement" as to an appropriate placement for the child. *See Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372 (1985). These challenges to the HOD are the subject of, and will be addressed on the merits in, the pending appeal. In any event, the plaintiff's focus on the alleged deficiencies in the HOD is misplaced since the two-part inquiry relevant to resolving the pending petition for injunctive relief is (1) whether there is an ongoing proceeding under the IDEA, a factor that is indisputably met, and (2) what the child's current educational placement is. *See, e.g., Andersen*, 877 F.2d at 1023–24.

With respect to the second factor, while the Court has made plain its disagreement with the plaintiff's position that a placement may only be predicated on an IEP, the plaintiff is correct that an educational placement is not necessarily wedded to a particular school. *See Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 n.5 (finding changing a child's school-provided residential setting not a sufficient change in educational placement to trigger the stay-put provision). A hearing officer's determination that a given placement is appropriate is sufficient to render that placement a "current educational placement" for the purposes of the

9

stay-put provision. *See F.S. ex rel. Snyderman v. District of Columbia*, No. 06-923, 2007 WL 1114136, at *4 (D.D.C. Apr. 13, 2007) (citing *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 200–01 (2d Cir. 2002) and *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990)); *see also Vinyard*, 901 F. Supp. 2d at 86 (collecting cases). In *Vinyard*, the court found that, because the plaintiff denied the defendants' child a FAPE and failed to provide an IEP, the private placement at which the defendants' parents placed the child was the "current educational placement" for the purposes of the stay-put provision. *See Vinyard*, 901 F. Supp. 2d at 86.

Although the plaintiff argues that *Vinyard* premised its ruling on the HOD's explicit finding that the private school in which the child was enrolled "is deemed [the child's] current placement for stay-put purposes," Pl.'s Opp'n at 5, the *Vinyard* decision does not rely on this language as a necessary talisman to invoke the stay-put provision. Rather, the *Vinyard* court relied on the fact that the hearing officer found the private school to be "an appropriate placement" as dispositive. *See Vinyard*, 901 F. Supp. 2d at 86. Similarly, the HOD in the instant case found, unambiguously, that the private school in which the defendants' child is enrolled is "proper under the IDEA, as the Student is receiving significant educational benefit from the program" and is "appropriately tailored to meet the needs of the Student." AR at 552. The instant HOD also ordered the plaintiff to fund the child's education at that school for the remainder of the 2012-2013 school year. *Id.* at 553. There is no doubt that, for the purposes of the stay-put provision, the HOD in this case established the defendants' child's "current educational placement" as the school in which she is currently enrolled.

The plaintiff also argues that the underlying determination from which the plaintiff appeals only required prospective placement for the 2012-2013 school year and, consequently, it

10

should not be required to fund the 2013-2014 school year. Pl.'s Opp'n at 6. While this is true, the HOD, which was issued in November 2012 at the mid-point of the 2012-2013 school year, also ordered the plaintiff to develop an IEP for the defendants' child within thirty days. AR at 554. Had such an IEP been prepared, there would presumably have been no need to order funding for the 2013-2014 school year because an IEP would have provided the defendants' child with a FAPE that the parents could choose to accept or decline. The plaintiff is within its rights to appeal that HOD, but cannot interpret the structure of the HOD's order as limited to placing the child at her private school only for the then-current school year and absolving the plaintiff of any responsibility to provide a placement in future years.[4]

The HOD sets forth the requisite findings to make the defendants' child's current school her "current educational placement" for the purposes of the IDEA. Moreover, the plaintiff's refusal to pay for that current educational placement for the current 2013-2014 school year qualifies as a unilateral change in such placement sufficient to trigger the stay-put provision. *See Petties v. District of Columbia*, 881 F. Supp. 63, 66 (D.D.C. 1995)( "[f]ailing to make payments in whole or in part or cutting off funds for special education programs amounts to a unilateral change in students' placements, which is prohibited by the IDEA"); *District of Columbia v. Vinyard,* 901 F. Supp. 2d 77, 83 (D.D.C. 2012) ("[M]aintenance of a child's current placement includes full payment for the program in which the student is placed, and a failure by the school district to fund a child's current educational placement constitutes grounds for stay-put injunctive relief.").

---

[4] At oral argument, the plaintiff explained that it funded the 2012-2013 school year for the child in accordance with the HOD but refused to provide an IEP in order to preserve a live controversy for appeal. It is the plaintiff's position that, had the plaintiff fully complied with the HOD, the plaintiff's argument as to the propriety of preparing an IEP for the child would likely have been rendered moot.

11

Thus, the defendants have met their burden under § 1415(j) of showing they are entitled to injunctive relief enforcing the stay-put provision and requiring the plaintiff to fund the child's education for the 2013-2014 school year at the private school at which she is currently enrolled.

### B. This Decision Is Not A De Facto Merits Ruling

The plaintiff contends that "ruling that 'maintenance of placement' applies necessarily presumes that [the plaintiff] is obligated to provide [the defendants' child] an educational placement, and would amount to a decision on Plaintiff's appeal." Pl.'s Opp'n at 5. This argument is unavailing. Today's ruling expresses no opinion as to the validity of the underlying HOD. Rather, it is carrying out the express Congressional policy embodied by the stay-put provision that "all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Susquenita Sch. Dist. v. Raelee S. by and through Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996); *see also Vinyard*, 901 F. Supp. 2d at 88 (noting that the plaintiff's "compliance with a stay-put order bears no preclusive effect as to its appeal of the [HOD's] reimbursement award . . . or of the [HOD's] findings regarding [the child's] entitlement to a new IEP."). Therefore, today's ruling should not be viewed as having any bearing on the ultimate success or failure of the plaintiff's underlying administrative appeal.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion for a Preliminary Injunction, ECF No. 26, is granted. An appropriate Order accompanies this Memorandum Opinion.

Date: November 13, 2013

_____

BERYL A. HOWELL
United States District Judge